IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS PRINCE, JR., ) | |
| an individual ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: CV 07 BE-0178-S |
| ) | |
| WESTERN EXPRESS, INC., a ) | |
| corporation; ) | |
| JOSEPH BULLOCK, JR., an ) | |
| individual; et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

These matters are before the court on "Defendants' Motion for Partial Summary Judgment" (doc. 38) and "Plaintiff's Motion for Partial Summary Judgment" (doc. 42). Defendants Western Express, Inc. and Joseph Bullock, Jr. seek partial summary judgment in their favor on Plaintiff Thomas Prince, Jr.'s claim of wanton operation. Def.'s Mot. P.S.J. 1 (doc. 38). Western also seeks partial summary judgment in its favor on Plaintiff's claims of negligent/wanton entrustment, hiring, training, monitoring, supervision and retention.

Plaintiff files a cross motion seeking partial summary judgment that "the defendants were negligent in the operation of the vehicle that was being operated by the defendant Joseph Bullock on behalf of the defendant Western . . . ." Plt.'s Mot. P.S.J. 1 (doc. 42). For the reasons stated in this memorandum opinion, the court will GRANT Defendants' motion, and will DENY Plaintiff's motion.

1

## I.  FACTS

This case arises out of a motor vehicle accident that occurred on December 14, 2006, at the intersection of 2nd Place West and Finley Boulevard in Birmingham, Jefferson County, Alabama.  Jagorren Kelly was operating a car westbound along Finley Boulevard.  Plaintiff was traveling as a passenger in the Kelly's vehicle.  Bullock was attempting to turn from 2nd Place West into the eastbound lanes of Finley Boulevard when Kelly's car collided with the tractor-trailer.  At the time of the accident, Bullock was a Western employee and was operating a Western-owned tractor-trailer.

The evidence of record reflects that Bullock's negative driving history is confined to the years 1989-2001.  In 1989, Bullock's license was suspended after he pled guilty to DUI in North Carolina.  This offense occurred before Bullock began driving commercially, and more than fifteen years before the subject accident.  Bullock also had received two speeding tickets, one in 1999 and the other in 2000.  Further, Bullock was involved in two minor traffic accidents, one in December 2000 and the other in May 2001.  Both of these accidents occurred while Bullock was driving commercially for another employer, Grayson Mitchell, Inc.  As a result of these accidents, Grayson terminated Bullock after six years of employment even though "he was a good driver, but he had too many incidents and [the] insurance company wanted him gone . . . ."  Depo. Bullock 52:16-18 (Mar. 25, 2008).

In 2002, Bullock began driving commercially for Deaton, Inc.  As part of the qualification process to drive for Deaton, Bullock took a written exam, a medical exam, a drug screen, and a road test.  The road test examined Bullock's ability to stop, yield the right of way, and determine safety hazards in intersections.  Western purchased Deaton in 2003, and Bullock became a

Western Employee. At the time of the purchase, Western had access to Bullock's employment records from Deaton, including an "Accident/Incident Record" that documented the two accidents in 2000 and 2001. However, Bullock failed to disclose these accidents on his application with Deaton. Western considered Bullock a qualified driver, and conducted annual reviews of Bullock from 2003-05, during which time he maintained a clear driving record.

According to his deposition testimony, at the time of the subject accident Bullock brought the tractor-trailer to a complete stop at the stop sign on 2nd Place West, looked to his left down the westbound lanes of Finley Boulevard, looked to his right down the eastbound lanes of Finley Boulevard, and then looked back to his left before pulling into the intersection. A nearby business' security camera recorded the accident. The video shows that Bullock waited at the stop sign and allowed other traffic to pass while he was observing Finley Boulevard. Bullock saw Kelly's car "way down the road, and then started to pull off." Depo. Bullock 26:14. Bullock testified that he "didn't think [he] was going to have a accident" when he pulled into the intersection. Depo. Bullock 25:9-18. The tractor-trailer's cab cleared the westbound lanes of Finley Boulevard and reached the median where Bullock began turning into the eastbound lanes when Kelly's car struck the tractor-trailer's rear axles. Plaintiff suffered injuries in the crash. On January 3, 2007, Plaintiff filed suit in state court. On January 26, 2007, Defendants removed the case to this court. Jurisdiction is proper under 28 U.S.C. §1332 because of complete diversity and the amount in controversy exceeds $75,000.

## II.  STANDARD OF REVIEW

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying [the evidence that demonstrates] the absence of a genuine issue of material fact." *Id*. at 323.  After the moving party demonstrates an absence of evidence to support the nonmoving party's case, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Disagreement between parties is not significant unless the disagreement presents a "genuine issue of material fact." *Id*. at 247-48.  A dispute of material fact is genuine if a reasonable jury, applying the relevant law to the evidence presented, could return a verdict for the nonmoving party.  *See Bradford v. Bierton*, 883 F.2d 928, 933 (11th Cir. 1989).

　　　　　When considering a motion for summary judgment, a court must view the facts "in the light most favorable to the non-moving party . . . ." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).  The court does not "weigh the evidence and determine the truth of the matter" but rather, simply focuses on whether a genuine issue of material fact exists. *Anderson*, 477 U.S. at 249.  Where a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd of Public Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007).  "[T]he plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish

4

the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

### III.  DISCUSSION

**A.     Defendants' Motion for Partial Summary Judgment**

**1.  Wanton Operation**

In Count I of his Complaint, Plaintiff alleges that Bullock "acted negligently and/or wantonly in that he . . . failed to yield the right of way, failed to use proper visual search techniques and keep a prudent and proper lookout, failed to use proper hazard perception techniques, failed to utilize proper space management, and otherwise failed to exercise reasonable care and follow all applicable rules of the road and regulations in the operation of the vehicle, thereby causing a collision with the vehicle in which the Plaintiff was a passenger." Pl.'s Comp. ¶ 5 (doc. 1-2).

In Count II of his Complaint, Plaintiff alleges that Bullock and various fictitious Defendants "negligently and/or wantonly: (a) operated the tractor-trailer which collided with the vehicle occupied by the Plaintiff . . . ." Pl.'s Comp. ¶ 13(a). Defendant argues that the allegations in Count I and Count II, at worst, only amount to negligence, and summary judgment on the wantonness claim is appropriate. Plaintiff counters that "reasonable people could differ on the existence of Bullock acting wantonly." Pl.'s Br. 9 (doc. 54).

Wantonness has a higher standard of proof than negligence. Alabama law defines wantonness as "conduct which is carried on with a reckless or conscious disregard of the rights

or safety of others." Ala. Code 1975 § 6-11-20(b)(3).  To survive summary judgment, Plaintiff must establish that a genuine issue of material fact exists as to whether Bullock: (1) acted consciously when he attempted to cross the intersection; and (2) was conscious, based on existing conditions, that injury was a likely or probable result from his actions.  *See Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004).

The court finds that the evidence of record, even when viewed in a light most favorable to Plaintiff, cannot amount to more than negligence.  Bullock testified in his deposition that he stopped completely at the intersection, looked to his left, saw Kelly's car "way down the road, and then started to pull off."  Depo. Bullock 25: 9-18.  The evidence of record gives no indication that when he proceeded into the intersection, Bullock was conscious that injury was *likely or probable* to occur.  To the contrary,  Bullock expressly stated that he "didn't think [he] was going to have a accident."  Depo. Bullock 26:14.

Additionally, a nearby business's security camera recorded the entire accident sequence.  The court has carefully reviewed the video, which shows the tractor-trailer at a complete stop at the stop sign while other traffic passes by on Finley Boulevard.  When Bullock pulled into the intersection, Kelly's car was not even in the frame.  The video supports Defendants' position that Bullock's actions cannot amount to more than negligence as a matter of law.

Plaintiff concedes as much in his brief by stating that Bullock saw Kelly's car approaching, "and with the knowledge that if he pulled into traffic, *injury could result*, the defendant Bullock pulled out in front of the oncoming car."  Pl.'s Br. 9 (emphasis added).  The mere possibility that "injury could result" does not satisfy the wantonness standard that injury is a "likely or probable" result.  A reasonable jury, applying the relevant law to the evidence of

record, could not find that Bullock and/or Western wantonly operated the vehicle. As such, summary judgment on Plaintiff's wanton operation claim is appropriate.

### 2. Negligent and/or Wanton Entrustment

In Count III of his Complaint, Plaintiff alleges that Western "negligently and/or wantonly entrusted a tractor-trailer to an incompetent driver with knowledge of said driver's incompetence." Pl.'s Comp. ¶ 19(b). To survive summary judgment on his negligent entrustment claim, Plaintiff must establish a genuine issue of material fact as to: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Pryor v. Brown & Root USA*, 674 So. 2d 45, 51 (Ala. 1995) (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)). Negligent entrustment is "founded on the primary negligence of the entrustor in supplying a motor vehicle to an incompetent driver, with manifestations of the incompetence of the driver as a basic requirement of a negligent entrustment action." *Pryor*, 674 So. 2d at 51.

In *Pryor*, the plaintiff was involved in a motor vehicle accident and brought suit alleging respondeat superior and negligent entrustment against the driver's employer.[1] *Id*. at 46. The driver was traveling home in a company-supplied vehicle when he ran a red light and collided with the plaintiff's vehicle. *Id*. at 47. The driver had received a DUI ten years prior to the accident, had received two speeding tickets in the five years prior to the accident, but had not been involved in any other accidents prior to the accident. *Id*. at 51. The court dismissed the

---

[1] Plaintiff also brought suit against the driver alleging negligence and wantonness. However, the appeal only dealt with whether the plaintiff "met her requisite burdens of proof regarding issues of respondeat superior liability and negligent entrustment." *Pryor*, 674 So. 2d at 46.

negligent entrustment claim, concluding that the driver's prior record was insufficient to support that claim, and that plaintiff "failed to present substantial evidence that [the driver] was an incompetent driver or that [the driver's employer] had any knowledge that would indicate [that the driver] was incompetent." *Id*. at 52.

*Pryor* is analogous to the case *sub judice*. The subject accident occurred in December 2006. Bullock received a DUI in 1989, before he began driving commercially, and more than fifteen years before the subject accident. Bullock also received two speeding tickets prior to the subject accident, one in 1999 and the other in 2000. Unlike *Pryor*, where the driver received a DUI ten years prior to the underlying accident and received both speeding tickets in the five years prior to the underlying accident, Bullock received a DUI more than fifteen years prior the subject accident and received both speeding tickets more than five years prior to the subject accident.

Bullock was involved in two minor traffic accidents, one in December 2000 where he "bumped a lady in the back" at a red light, and the other in May 2001 where he hit another vehicle after it swerved in front of him. Depo. Bullock 15:22-16:22. Both of these accidents occurred *prior* to Bullock's employment with Western, and more than five years prior to the subject accident. Bullock was not involved in any accidents while he drove for Deaton beginning in 2002 or while he worked for Western from 2003-05, during which time Western monitored Bullock's driving. Two minor traffic accidents that occurred before Bullock's employment with Deaton and Western, and more than five years prior to the subject accident, are insufficient to establish Bullock as an incompetent driver. Plaintiff has failed to show by substantial evidence that Bullock was incompetent, or that Western had the requisite knowledge of Bullock's alleged incompetence in December 2006 at the time of entrustment. As such, summary judgment on

Plaintiff's negligent entrustment claim against Western is appropriate.

Plaintiff also asserts a wanton entrustment claim, which has a higher standard of proof than negligent entrustment. Wantonness is "the conscious doing of some act or omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting some act, injury will likely or probably result." *Jordan ex rel. Jordan v. Calloway*, 2008 WL 4277944 * 5 (Ala. Sept. 19, 2008) (quoting *Barker v. Towns*, 747 So. 2d 907, 907 (Ala. Civ. App. 1999)). To establish wanton entrustment, Plaintiff would have to show that Western entrusted the tractor-trailer to Bullock while *knowing* that entrustment would likely or probably result in injury. *See id*. (emphasis added). Because wanton entrustment has a higher standard of proof than negligent entrustment, and Plaintiff has failed to establish a genuine issue of material fact as to negligent entrustment, Plaintiff cannot prove wanton entrustment as a matter of law. As such, the court also dismisses with prejudice Plaintiff's wanton entrustment claim against Western.

### 3. Negligent and/or Wanton Hiring, Training, Supervision and Retention

In Count III of his Complaint, Plaintiff alleges that Western negligently and/or wantonly hired, trained, supervised, and retained Bullock.[2] Pl.'s Comp. ¶ 19. To prove a *prima facie* case of negligence, a plaintiff must establish four elements: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Nelson By and Through Sanders v. Meadows*, 684 So. 2d 145, 148 (Ala. Civ. App. 1996). Plaintiff has failed to establish a *prima facie* case of negligent hiring, training, supervision and retention. Plaintiff cites only

---

[2] Count III also contains other allegations. To the extent that Count III alleges other theories based on negligence that Defendants did not address in their motion, those claims remain.

three sources of authority in his entire brief, all of which are Alabama Pattern Jury Instructions, and none of which are relevant to these claims. Plaintiff's brief contains only one paragraph of argument relevant to these claims.

The Alabama Supreme Court has stated that "'[i]n the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him . . . .' A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees." *Hester v. Brown*, 512 F. Supp. 2d 1228, 1238 (M.D. Ala. 2007) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983)).  To survive summary judgment on his negligent hiring, supervision, and retention claims, Plaintiff must prove: (1) the underlying tortious conduct of Bullock; and (2) that Western had actual or constructive knowledge of Bullock's alleged incompetence. *Id*.

In *Hester*, the plaintiff was involved in a motor vehicle accident and required emergency medical treatment. *Id*. at 1231.  An EMT attempted to place an IV line in the plaintiff while in the ambulance. *Id*. at 1232.  Both the plaintiff and her mother, who was also in the ambulance, requested that the EMT stop treatment. *Id*.  However, because the plaintiff was restrained and her mother was forcibly removed from the ambulance by a sheriff's deputy, their attempts were unsuccessful and the EMT continued treatment. *Id*.  The plaintiff and her mother brought several claims against various defendants, one of which was a "negligent and/or wanton failure to supervise and monitor employees" against the ambulance service. *Id*.  The court dismissed the negligent supervision claim without even considering the underlying tortious conduct because the plaintiff "submitted no evidence that [the ambulance service] had actual or constructive

knowledge of [the EMT's] alleged incompetence." *Id*.

*Hester* is analogous to the case *sub judice*. Plaintiff has failed to cite any particular acts or omissions that did or should have put Western on notice of Bullock's alleged incompetence at any time during Bullock's employment prior to the subject accident. On the contrary, Bullock maintained a clear driving record in the five years prior to the subject accident, including 2003-05 when Western conducted annual reviews of Bullock. As such, Plaintiff's negligent hiring, supervision and retention claims are dismissed with prejudice. Likewise, Plaintiff's negligent training claim also fails because Plaintiff has not cited any particular acts or omissions that would establish liability under that theory. Plaintiff has failed to establish: (1) that Western owed Plaintiff a duty to train Bullock; (2) that Western breached that duty by negligently training and/or failing to train Bullock; and (3) any causation between Western's alleged breach and Plaintiff's injuries.

In Count III of his Complaint, Plaintiff also asserts wanton hiring, training, supervision and retention claims against Western. As discussed *supra*, because wantonness has a higher standard of proof than negligence, and Plaintiff has failed to establish a genuine issue of material fact as to *negligent* hiring, training, supervision and retention, summary judgment in favor of Western will also be granted as to Plaintiff's *wanton* hiring, training, supervision and retention claims.[3]

---

[3]Plaintiff concedes as much in his brief by declining to even address his wanton entrustment, hiring, training, supervision and retention claims. Plaintiff's brief states that the evidence of record "is enough for reasonable people to differ on the existence of the fact of Western Express's *negligence at least*." Pl.'s Br. 10 (emphasis added).

B.     **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks partial summary judgment "on those parts of his claim against the defendants, individual and corporate, that the defendants were negligent in the operation of the vehicle being operated by the defendant Joseph Bullock on behalf of the defendant Western . . . ." Pl.'s Mot. P.S.J. 1 (doc. 42).  Defendants argue that genuine issues of material fact exist as to their alleged negligence, and that summary judgment would be inappropriate.

"To prove negligence, a plaintiff must establish four elements: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Nelson By and Through Sanders v. Meadows*, 684 So. 2d 145, 148 (Ala. Civ. App. 1996) (citing *Crowne Investments, Inc., v. Bryant*, 638 So. 2d 873, 878 (Ala. 1994)). "[W]hether a person involved in an [automobile] accident acted reasonably in operating his motor vehicle depends on all of the circumstances surrounding the accident; the question is ordinarily one for the jury." *Id*. (quoting *Senn v. Alabama Gas Corp.*, 619 So. 2d 1320, 1322 (Ala. 1993).

Genuine issues of material fact exist in this case as to whether (1) Defendants owed a duty to Plaintiff; (2) Defendants breached that duty; and (3) the breach caused Plaintiff's injuries. Plaintiff cites Ala. Code 1975 § 32-5A-61, which states in pertinent part that "[n]o driver shall enter an intersection . . . unless there is sufficient space on the other side of the intersection . . . to accommodate the vehicle he is operating without obstructing the passage of other vehicles . . . ." Ala. Code 1975 § 32-5A-61.  Genuine issues of material fact exist as to whether "sufficient space" existed between Kelly's car and the tractor-trailer when Bullock proceeded into the intersection.

Plaintiff also cites Ala. Code 1975 § 32-5A-112, which states in pertinent part that after

stopping at a stop sign, "the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection . . . ." Ala. Code 1975 § 32-5A-112(a).  Again, genuine issues of material fact exist as to whether Kelly's car constituted "an immediate hazard" to the tractor-trailer.  A security camera recorded the entire accident sequence.  The video establishes genuine issues of material fact such as whether "sufficient space" existed when Bullock entered the intersection, and whether Kelly's car constituted an "immediate hazard" to the tractor-trailer.  A reasonable jury, applying the relevant law, could view the video and determine that Bullock's actions were reasonable. Based on the evidence of record, summary judgment as to the Defendants' alleged negligent operation in favor of Plaintiff would be inappropriate.  As such, Plaintiff's Motion for Partial Summary Judgment is denied.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion for Partial Summary Judgment is GRANTED, and Plaintiff's Motion for Partial Summary Judgment is DENIED.  A separate Order will be entered simultaneously.

DONE and ORDERED this 11th day of March, 2009.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE